## Farmers' Bank of Salvisa, et al. v. Parker, et al.

(Decided November 24, 1925.)

### Appeal from Mercer Circuit Court.

1. Fraudulent Conveyances—Husband's Conveyance to Wife Held Void as Against His Creditors to Extent of Value of Interest Conveyed in Excess of His Indebtedness to Wife.—Husband's conveyance to wife of interest in land worth at least ten times amount of his indebtedness to her, held voluntary and without valuable consideration as to such excess, and void as against husband's creditors to such extent.

2. Fraudulent Conveyances—Wife's Deed to Wife of Husband's Brother Held Invalid as to Husband's Creditors.—Wife's conveyance of interest in land, theretofore conveyed to her by her husband, to wife of his brother, held invalid as to husband's creditors, though brother had verbally agreed that his wife might have interest in his part of other land conveyed to brothers to extent of amount paid by her father as surety for her husband and charged to her as advancement, and she agreed to convey such interest to her brother-in-law's wife in exchange for latter's deed, where she paid none of consideration for brother's land, and latter was incumbered to extent of its value by her husband's debts.

C. E. RANKIN for appellants.

E. H. GAITHER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

In the fall of 1919, Scott Parker and Harlan Parker purchased a farm known as the "Jones Farm" for the sum of $17,280.00, 1/3 payable March 1, 1920, and the balance due in one, two and three years, with a precipitation clause. The first payment was made in cash, but owing to a slump in the tobacco market they realzied very little for the 1920 crop and were unable to pay the first note at maturity and delayed paying the interest; and fared no better during the year 1921. At that time land values had declined from 1/4 to 1/3, and they were otherwise involved, as will appear below, and on the 3rd of March, 1922, executed a note to Jones for $691.20, the amount of accrued interest, and a written contract by which they mortgaged to Jones certain personal property, including that year's crop, as security for the note, with the further stipulation that, upon their failure to comply with the terms of that contract, they would voluntarily surrender the farm to him. Failing in this

contract they did on the 3rd of March, 1923, reconvey the the land to Jones, who cancelled and returned the lien notes. As suggested, they were otherwise heavily involved. In order to procure funds for his half of the cash payment, Harlan Parker, together with his father-in-law, had executed to the Anderson National Bank a note for $2,000.00. At maturity he paid $500.00 on this and the remainder was paid by his father-in-law, W. A. Chapman. Aside from this, on the 18th of January, 1921, Scott Parker executed a note to the bank of Salvisa for the sum of $700.00, and Harlan Parker, together with his father, James Parker, as surety, executed to the same bank a promissory note for $650.00, and prior to that date Scott and Harlan had executed to that bank a joint note for $1,000.00, all of which was due and owing the first of January, 1922.

Suit was brought on the note for $1,000.00 on April 19, 1922, and judgment recovered. Neither of the parties owned any other real or personal estate, except Scott owned a two-third remainder interest in a tract of land containing 73 acres encumbered with the life estate of his father, who was eighty years of age. This land had belonged to James Parker's first wife, long since dead, and James Parker had a curtesy interest therein and was living upon it with his second wife, the mother of Scott and Harlan, Scott's interest having been purchased from the heirs of the first wife. A fee in this land is shown to have been worth from $50.00 to $60.00 per acre.

Pending the matters above set out, on the 5th of January, 1922, Scott Parker, for the recited consideration of $500.00 cash and love and affection, conveyed his interest in this tract of land to his wife, Viola Parker. James Parker and his wife joined in the deed and reserved the right to maintenance for their lives from the property.

On January 31, 1923, Scott Parker and Viola Parker, for the recited consideration of love and affection and the sum of $500.00 cash in hand paid, conveyed the same interest to Jennings Parker, wife of Harlan Parker. James Parker and his wife also united in this deed with the same provision for maintenance. On the 2nd of July, 1923, the bank of Salvisa brought this action against Scott, Viola, Harlan, James, Georgia A. and Jennings Parker, seeking to recover judgment against Scott and Harlan on the two notes for $700.00 and $650.00 respectively, and to set aside the deeds mentioned as being

made to defraud their creditors. By an amended petition the note for $1,000.00 was also set up. In the meantime Scott and Harlan Parker had been adjudged bankrupts and the bank had gone into liquidation and the suit was prosecuted by the state banking commissioner. The court rendered judgment in favor of the latter against James Parker in the sum of $650.00 and dismissed the action as to the other parties. Plaintiff appeals, the only question being the intent with which these conveyances were made. The evidence conduces to show that Viola Parker inherited from her father's estate four or five hundred dollars, the exact amount not being shown, and that some of this was used in the purchase of family necessities and a part of it by her husband in the purchase of an interest in the Parker estate. The amount of this cannot be definitely fixed at over $200.00. While no obligation passed between them it is reasonably clear that he owed her this sum of money, and as the conveyance is not attacked as being preferential, under the act of 1856 it seems that she should be entitled to this amount. It appears, however, that Scott Parker's interest in this tract of land was worth at least ten times that amount, and as to such excess in value under the circumstances the conveyance would be voluntary and without valuable consideration.

The financial condition of all these parties was so evident that none of them could have been unaware of it. In January, 1922, the value of land had declined to such an extent that the Jones farm was not worth anything in excess of the deferred payments. The parties were owing to the bank of Salvisa alone $2,350.00, and it appears that there was other indebtedness due by them. In order to hold the farm for the year 1922 they executed a mortgage on all their personal property to secure overdue interest, with the stipulation that the farm would be surrendered if they failed to meet that obligation. Under such circumstances it is clearly evident that they were undertaking through their wives to save what they could out of the wreck, and to the extent indicated above this conveyance was void as against creditors.

Jennings Parker is in no better attitude. Her contention is that upon the payment by her father of the $1,500.00 surety debt to the Anderson National Bank that he charged that sum to her as an advancement and that her husband verbally agreed that she might have an interest to that extent in his part of the lands conveyed

to Scott and Harlan Parker by W. D. Jones; that Harlan Parker desired to give up the Jones land and Scott desired to keep it and that they verbally agreed that Scott should hold the land and Harlan would deed his interest to him. She and Viola were unfriendly and did not speak, but it was also verbally agreed between Scott, Harlan and Viola that Viola would convey to her Viola's interest in the Parker land and that Viola should receive her interest in the Jones land, and all the parties testify to that effect, though no conveyance was made except the deed from Viola to her as above set out; the reason assigned for this being that Scott was negotiating for a loan to the Federal Land Bank and did not want to complicate the title. We are not impressed with this arrangement. Jennings Parker paid no part of the consideration in the purchase of the Jones land. True her father as surety paid $1,500.00 to the bank for her husband and her husband thereby became indebted to him in that amount, and he could have given this claim to her, but it was encumbered by lien debts to the extent of its value and Harlan Parker was insolvent and the gift was of negligible value. If we assume that such arrangement was otherwise enforceable it is clear that the Jones farm at that time would not have sold for more than the lien debts, and that Jennings' equity therein, if any, would not have been of any potential value. While it is deplorable that the shrinkage in value of farm products and farm lands has engulfed these young people in bankruptcy our sympathy for them cannot overcome the plain facts and circumstances of the case that indicate that they all realized that such was their fate and adopted this as an expedient to save what they could out of the crash, and that this deed is also invalid as to the creditors of Scott Parker.

It seems to us that a proper judgment would be to set both deeds aside and render a decree for the sale of Scott Parker's two-third remainder interest in the land in question, subject to the homestead right of his father. As the second deed was made to Jennings Parker without consideration it would be equitable to award to Viola the amount she is shown to have paid of the original consideration therefor, to-wit, the sum of $200.00, with interest from September 15, 1914, the day that land was purchased, and the balance to be paid to appellant.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.